UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                           Case No. 15-CR-102

JEFFREY W. LEWKE,

    Defendant.

## ORDER AND RECOMMENDATION

       The grand jury in this district on May 27, 2015, returned a nine count indictment charging Jeffrey W. Lewke with three counts of wire fraud in violation of Title 18, United States Code, Section 1343, and six counts of making a false statement in violation of Title 18, United States Code, Sections 1014 and 2. (ECF No. 1.) On October 8, 2015, Lewke filed two pretrial motions: a motion for a bill of particulars (ECF No. 17) and a motion to suppress (ECF No. 19). The government responded to the motions (ECF No. 25, 26), and Lewke replied (ECF Nos. 29, 30). The motions are now ready for resolution. In light of the complexity of this case, the Honorable Rudolph T. Randa, to whom this matter is assigned for trial, has not yet scheduled a trial.

**Motion for Bill of Particulars**

Lewke asks the court to order the government to provide him with a bill of particulars with respect to counts two, three, four, five, six, seven, and nine of the indictment. (ECF No. 18.) He asserts that the case is complex and involves voluminous discovery. Despite the extensive discovery and the best efforts of Lewke's three attorneys, "the defense has been unable to discern the basis for the government's allegations contained in" these counts. (ECF No. 18 at 2.)

The indictment alleges that between January 2009 and November 2013 Lewke engaged in a scheme to defraud the Federal Crop Insurance Corporation (FCIC). (ECF No. 1, ¶ 1.) The FCIC reinsures private crop insurance companies that provide insurance for farmers against the risk of crop loss or the inability to plant crops as a result of certain natural events, such as adverse weather. (ECF No. 1, ¶¶ 3-5.) One such private insurer reinsured by the FCIC was Rain & Hail, LLC. (ECF No. 1, ¶ 3.)

Insured farmers communicate to their private crop insurers in a variety ways, including an acreage report on which the farmer is required to disclose all the acres he planted during the crop year as well as the acres the farmer was unable to plant due to reasons covered by the crop insurance policy. (ECF No. 1, ¶ 7.)

The Farm Service Agency (FSA) is an agency within the United States Department of Agriculture (USDA) "that administers disaster relief programs intended to protect farmers from the consequences of natural disasters." (ECF No. 1, ¶ 8.)

Farmers participating in these disaster relief programs "must submit forms to the FSA certifying the type of crop and the number of acres planted on each of their properties." (ECF No. 1, ¶ 8.) "Farmers also certify to the FSA the number of acres they were prevented from planting due to a natural disaster and describe the type of disaster that prevented them from planting a crop." (ECF No. 1, ¶ 8.) Private crop insurers rely upon these forms for determining and calculating insurance payments. (ECF No. 1, ¶ 9.)

Lewke allegedly submitted false information to Rain & Hail and the FSA to increase his insurance payments. (ECF No. 1, ¶ 12.) This scheme included: falsely stating that he was unable to plant certain land due to an insurable loss when, in fact, no insurable loss prevented him from planting; he successfully planted the land; he never attempted to plant the land; the land was used for some other purpose; or he did not own or lease the land. (ECF No. 1, ¶¶ 13 a., b., c. , e.).

Count two of the indictment charges Lewke with wire fraud for faxing on or about July 22, 2011, an acreage report to Rain & Hail in which Lewke falsely stated that he was prevented from planting certain properties in Wisconsin. (ECF No. 1, ¶¶ 19-21.) Count three is identical to count two with the exception that count three alleges a fax occurring on or about August 9, 2013. (ECF No. 1, ¶¶ 22-24.)

Count four alleges that Lewke made a false statement on or about March 6, 2009, "for the purpose of influencing the action of the Federal Crop Insurance Corporation and a company it reinsures, in that the defendant falsely reported the amount of his

3

total crop production." (ECF No. 1, ¶ 25.) Count five alleges that between roughly July 13, 2011, and July 22, 2011, Lewke falsely stated in an acreage report submitted to Rain & Hail the number of acres he was prevented from planting due to insurable losses. (ECF No. 1, ¶ 26.) Count six alleges that on December 30, 2011, Lewke "falsely reported the county from which his crop production came." (ECF No. 1, ¶ 27.) Count seven is identical to count six except that it alleges a statement occurring on March 5, 2012. (ECF No. 1, ¶ 28.) Count nine alleges that between roughly July 11, 2013, and August 9, 2013, in "an acreage report submitted to Rain & Hail and dated July 11, 2013, the defendant falsely reported the number of acres he was prevented from planting due to insurable causes." (ECF No. 1, ¶ 30.)

Lewke argues that these details are insufficient to apprise him of the charges because the discovery contains more than 50 acreage reports for 2011 and more than 35 for 2013. (ECF No. 18 at 4.) According to Lewke, the indictment fails to identify any particular acreage report relevant to counts two, three, five, or nine. (ECF No. 18 at 4.) As for count four, Lewke contends that a bill of particulars is necessary because he "has been unable to locate any documents related to the allegation that Mr. Lewke made a false statement on March 6, 2009." (ECF No. 18 at 4.) He has been similarly unable to identify any documents relevant to counts six and seven and notes "[t]he indictment does not even name the company alleged to have received the false statement." (ECF No. 18 at 4.)

4

Lewke acknowledges in his reply that the government's response to his request for a bill of particulars addressed many of his concerns. (ECF No. 28 at 1.) Thus, he revised his request. He asks the court to order the government to provide him with a bill of particulars specifically identifying which of the fifty July 13, 2011 acreage reports that the government submitted in response to his motion (ECF No. 26-1 at 1-30) are false and "in what way the acreage reports have been allegedly falsified" (ECF No. 28 at 1-2). Lewke also asks for disclosure of any agent whom the government alleges transmitted the reports over wire on Lewke's behalf. (ECF No. 28 at 2-3.)

Federal Rule of Criminal Procedure 7(f) permits the court to order the government to provide a defendant with a bill of particulars. "The purposes of a bill of particulars are to inform the defendant of the nature of the charge against her to enable her to prepare for trial, to avoid or minimize the danger of surprise at time of trial, and to enable her to plead acquittal or conviction in bar of another prosecution for the same offense when the indictment itself is too vague and indefinite." *United States v. Brown*, 2015 U.S. Dist. LEXIS 6667, 10-12 (E.D. Wis. Jan. 21, 2015) (citing *United States v. Roman*, 728 F.2d 846, 856 (7th Cir. 1984)). "Whether to require a bill of particulars rests within the sound discretion of the district court." *United States v. Hernandez*, 330 F.3d 964, 975 (7th Cir. 2003).

The "bill-of-particulars analysis is similar to the constitutional sufficiency-of-the-indictment analysis; 'in both cases, the key question is whether the defendant was

sufficiently apprised of the charges against him in order to enable adequate trial preparation.'" *United States v. Vaughn*, 722 F.3d 918, 927 (7th Cir. 2013) (quoting *United States v. Blanchard*, 542 F.3d 1133, 1140 (7th Cir. 2008)). "[A] bill of particulars is 'unnecessary where the indictment sets forth the elements of the charged offenses and provides sufficient notice of the charges to enable the defendant to prepare his defense.'" *Id.* (quoting *Hernandez*, 330 F.3d at 975; citing *United States v. Kendall*, 665 F.2d 126, 135 (7th Cir. 1981)). "Information relevant to the preparation of a defense includes the elements of each charged offense, the time and place of the accused's allegedly criminal conduct, and a citation to the statute or statutes violated." *Blanchard*, 542 F.3d at 1140; *see also United States v. Fassnacht*, 332 F.3d 440, 446 (7th Cir. 2003).

"Where the indictment fails to provide the full panoply of such information, a bill of particulars is nonetheless unnecessary if the information 'is available through some other satisfactory form,' such as discovery.'" *Blanchard*, 542 F.3d at 1140 (quoting *Hernandez*, 330 F.3d at 975); *see also Vaughn*, 722 F.3d at 927. Moreover, while a defendant is entitled to know the offense with which he is charged, the government need not disclose all the details of how it will prove its case. *Blanchard*, 542 F.3d at 1141 (citing *Fassnacht*, 332 F.3d at 445); s*ee also Kendall*, 665 F.2d at 135 (quoting *United States v. Giese*, 597 F.2d 1170, 1181 (9th Cir. 1979)) ("It is established that 'a defendant is not entitled to know all the evidence the government intends to produce, but only the theory of the government's case.'"); *United States v. Douglas*, 2005 U.S. Dist. LEXIS 13163 (W.D. Wis.

6

June 27, 2005) (citing *Wong Tai v. United States*, 273 U.S. 77, 82 (1927)) ("[A] bill of particulars under F. R. Crim. Pro. 7(f) is not designed to provide the defendant with a detailed disclosure of the government's witnesses, legal theories or evidentiary detail."). Thus, a motion for a bill of particulars should not be confused with a request to admit or an interrogatory; it is not a discovery tool. S*ee United States v. Vest*, 2006 U.S. Dist. LEXIS 52135, 10 (S.D. Ill. July 28, 2006).

As a preliminary matter, there is an apparent disconnect between the parties as to what they are referring when they refer to an acreage report. The government refers to the documents attached to its response as *the* 2011 acreage report (ECF No. 26 at 4, n.1); Lewke in reply refers to this 32 page exhibit as "50 pages of acreage reports" (ECF No. 28 at 1.) This misunderstanding may be one source of Lewke's confusion regarding the indictment. Plainly, the government is alleging that all 32 pages constitute one acreage report; although each page is individually signed and dated, the exhibit does not consist of multiple acreage reports.

Correcting this misunderstanding moots Lewke's request whereby he asks "that the government be required to specifically identify which of the multiple reports submitted on single days it alleges are false." (ECF No. 28 at 1.) To the extent that Lewke is asking the government to point to the page and line within the report which it intends to rely upon, the court finds that such a request is not within the appropriate scope of a bill of particulars. Such a request asks the court to compel the government to

disclose not merely the evidence against Lewke but how the government intends to prove its case.

However, still remaining is Lewke's request that the court order the government "to identify in what way the acreage reports have been allegedly falsified." (ECF No. 28 at 2.) This request was not raised in Lewke's initial motion and thus the government did not address it in response. Having raised it for the first time in reply, Lewke's request is not properly before the court. *See Nationwide Ins. Co. v. Cent. Laborers' Pension Fund*, 704 F.3d 522, 527 (7th Cir. 2013). Moreover, it appears that Lewke is again asking the court to order the government to disclose how it will prove its case.

As for Lewke's request regarding the identity of any person who submitted the relevant reports on his behalf, the court will deny this request. Lewke proffers:

> It may be a valid defense and Mr. Lewke is entitled to know if, in fact, it was an agent of the alleged victim insurance companies who transmitted information that he simply provided to the insurance company over a wire. Put another way, can an alleged fraud victim manufacture a wire fraud count by taking allegedly false information and transmitting it to itself over a wire?

(ECF No. 28 at 3.)

Each of the wire fraud counts alleges that Lewke "knowingly caused" the transmission of "writings, signs, and signals" "for the purpose of executing the scheme to defraud[.]" (ECF No. 1, Counts One, Two, and Three.) The concern that Lewke identifies is addressed by the mens rea element set forth in the indictment. If the transmission of the documents via wire was unforeseeable to Lewke, he presumably

could not knowingly cause such transmission. *See United States v. Wiehoff*, 748 F.2d 1158 (7th Cir. 1984); *see also United States v. Calvert*, 523 F.2d 895, 903-04 (8th Cir. 1975). However, it does not matter whether it was Lewke, Lewke's wife, his personal insurance agent, the agent's secretary who Lewke never met and never anticipated being involved in the claims process, or anyone else, who ultimately hit "Send" on the fax machine and transmitted the relevant document to the insurer. The government may have no idea who actually transmitted the documents. In short, Lewke has failed to demonstrate that this information is relevant. Accordingly, his motion for a bill of particulars will be denied.

**Motion to Suppress**

"The Fourth Amendment requires that, absent certain exceptions not applicable here, police must obtain a warrant from a neutral and disinterested magistrate before commencing a search." *United States v. Mullins*, 2015 U.S. App. LEXIS 17844, 8 (7th Cir. Oct. 14, 2015) (quoting *United States v. Robinson*, 546 F.3d 884, 887 (7th Cir. 2008)). Any such search warrant must be supported by probable cause, U.S. Const. amend. IV, and facts allegedly establishing probable cause are generally set forth in an affidavit. "Probable cause is established when, in light of the totality of the circumstances, the issuing judge can make a practical, common-sense determination that there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Mullins*, 2015 U.S. App. LEXIS 17844, 8 (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

If an affidavit submitted to support a search warrant contains intentionally false or misleading statements, suppression of any evidence seized pursuant to that warrant may be appropriate. *See Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). Commonly referred to as a *Franks* motion, suppression on this basis requires a two-phase process. In the first phase, the defendant must "make a substantial preliminary showing that: (1) the warrant affidavit contained false statements, (2) these false statements were made intentionally or with reckless disregard for the truth, and (3) the false statements were material to the finding of probable cause." *Mullins*, 2015 U.S. App. LEXIS 17844, 8-9 (citing *United States v. Williams*, 718 F.3d 644, 647 (7th Cir. 2013)). False statements in the context of a *Franks* motion could also include omissions, not just affirmative misrepresentations. *Id.* at 9. Only if the defendant satisfies all steps in this first phase will the motion proceed to the second phase–an evidentiary hearing, commonly referred to as a *Franks* hearing. At a *Franks* hearing, the defendant must show by a preponderance of the evidence "that the false statements or omissions were made intentionally or with reckless disregard for the truth, and without the false material the affidavit's remaining content is insufficient to establish probable cause." *Id.*

Lewke contends the affidavit of Special Agent Todd Bucci contained several false statements. First, he alleges it falsely stated that Matthew Balfanz, the insurance agent who sold Lewke the Rain & Hail insurance policy, was prohibited under Rain & Hail's own policies, "which are consistent with the Loss Adjustment Manual Standards

Handbook, a publication prepared by the USDA FCIC," from assisting Lewke in filling out his claim. (ECF No. 20 at 2.) Lewke contends that the "Loss Prevention Manual Standards Handbook" prohibits insurance agents only from assisting insureds in filling out claims that use the "simplified claims process" (SCP). Otherwise, an insurance agent is permitted to assist an insured with a claim, provided there is a written agreement and an absence of a conflict of interest. (ECF No. 20 at 2-3.)

Next, Lewke argues that paragraph 14(b) of Bucci's affidavit was false when it stated, "Balfanz admitted that there were approximately 50 to 100 scale tickets that did not have a county written on them …." (ECF No. 20 at 3.) Lewke contends that this was a figure proffered by Bucci to which Balfanz merely agreed. (ECF No. 19 at 5-6.) Further, also with respect to paragraph 14(b), Lewke contends that Bucci mischaracterized Balfanz's statements regarding Lewke identifying which county to assign to scale tickets (ECF No. 20 at 6-7) and with respect to his knowledge of Lewke providing inaccurate information in the past (ECF No. 20 at 8).

Lewke also contends that Bucci was incorrect when he stated, "Balfanz was not supposed to be involved in any way in the claims process." (ECF No. 20 at 8.) Lewke asserts that "[c]rop insurance agents are routinely involved in assisting insured farmers in translating their production records into records that the insurance company will find acceptable," and will review crop production data from their insureds. (ECF No. 20 at 8-9.)

11

Paragraph 12(a) of Bucci's affidavit asserted that Lewke stated to an insurance adjustor that he irrigated a field three times in 2011 when, according to Bucci, other evidence suggests that Lewke irrigated the field only once. Lewke contends that Bucci inappropriately "omits from his affidavit information from an insurance adjuster's special report, dated March 5 2012, referencing agronomist Jim Beuge, who provided fuel delivery records to support the assertion that the Czech Pivot had run three (3) times in the month of June, July and August." (ECF No. 20 at 9.) Additionally, Lewke argues that Bucci should have noted that workers that went to the property to apply fertilizer reported they were unable to do so because the irrigation system was running. (ECF No. 20 at 10.)

Lewke also takes issue with the characterization of his failure to document the county of origin of corn set forth in paragraph 13 of Bucci's affidavit. Lewke asserts that, while a farmer is required to note the county of origin, there is no particular required method for doing so. According to Lewke, the "affidavit makes it sound like Mr. Lewke had broken a law or rule by having some scale tickets without counties of production written on them," but there is no such formal requirement. (ECF No. 20 at 10-11.)

Lewke further takes issue with the statement of a farmer who worked with him, recounted in paragraph 14(a) of Bucci's affidavit, where the farmer says he saw "Balfanz sitting at a table in Jeffrey Lewke's house going through a large pile of scale tickets. Balfanz appeared to be assigning to various counties for purposes of showing

12
Case 2:15-cr-00102-PP   Filed 11/24/15   Page 12 of 19   Document 32

which county the corn was harvested from." (ECF No. 20 at 11.) Lewke states, "There does not appear to be a recorded interview, nor a memorandum of interview with the cooperating farmer mentioned in paragraph 14(a)" and "[i]t also seems unlikely that a farmer present at Mr. Lewke's residence for an unspecified amount of time would be able to discern the purpose for which an insurance agent was looking through scale weight tickets." (ECF No. 20 at 11.)

Finally, Lewke argues that paragraph 14(c)(1) of Bucci's affidavit "makes it sound as though there is something improper about delivering grain to a grain elevator." (ECF No. 20 at 12.) Lewke also notes that the affidavit states that various yields were off by 26.1, 30.6, 68.3, 60.4, and 24.6, bushels per acre. (ECF No. 20 at 12-13.) Although it is unclear what significance Lewke attaches to this observation, in reply he argues that "[d]iscrepancies between an insurance appraisal and a farmer's actual harvest do not, by themselves, establish probable cause." (ECF No. 29 at 4.) Lewke posits: "How much can a harvest deviate from an appraisal before probable cause to believe a crime has been committed is established: 5%, 25%, 60%, 1 field, 3 fields, 5 fields, a combination thereof, or some other difference indicator?" (ECF No. 29 at 5.) Finally, Lewke notes that Bucci's statement as to where the insurance adjustor met with Lewke is unclear. (ECF No. 20 at 13.)

Many of Lewke's criticisms of Bucci's affidavit amount to little more than nitpicking. It is immaterial that Balfanz's estimate that counties were missing from 50 to

13

100 scale tickets emerged from the manner in which Bucci was questioning him. Nor is it material that the Loss Adjustment Manual Standards Handbook might contain exceptions to the general notion that an insurance agent cannot help an insured in preparing a claim. Whether it was because an exception did not apply, because Rain & Hail's own policies were stricter than the federal standards, or because Balfanz was simply wrong, the fact is that Balfanz admitted that his involvement in Lewke's claims was improper. (ECF No. 20-7, ¶ 14. b.) Lewke does not contend that Bucci misstated or fabricated the agent's statement, nor could he; a transcript of the interview is appended to his motion and confirms that the affidavit is accurate. (ECF No. 20-3 at 17-18.)

The court also finds no merit in Lewke's criticisms as to what certain statements "sound" like. (ECF No. 20 at 8, 11, 12.) A statement is not improper under *Franks* merely because it is arguably susceptible to a reading that is not the one most favorable to the defendant or that a strained reading might suggest that the statement is technically false. Bucci's affidavit suggests merely that the county of origin must be recorded, a fact Lewke concedes, and the standard means of doing so was by noting the county on the scale ticket. As such, a departure from the norm, especially when the departure could facilitate the suspected fraud, is probative. The court also disagrees that the affidavit "makes it sound as though there is something improper about delivering grain to a grain elevator." (ECF No. 20 at 12.)

As for the interview with the cooperating farmer, Lewke is wrong in alleging that there was no recording or memorandum of the interview. The interview was documented in a March 5, 2012 memorandum by Bucci, which the government appended to its response. (ECF No. 25-5.) And as for Lewke's assertion that it seems unlikely that the farmer would be able to discern the purpose for which the insurance agent was looking through scale weight tickets, the court finds no reason to suspect that it would be difficult or time-consuming for a person to discern such actions with respect to scale tickets. But more importantly, Lewke acknowledges that the farmer was present for an unspecified amount of time and, therefore, Lewke's assumption about what the farmer would be able to discern is without any foundation.

With respect to the frequency of the irrigation, the additional information Lewke identifies is not inconsistent with the information in the affidavit. The report does not state when the workers observed the irrigation system in use. (ECF No. 206-6 at 2.) The fuel receipt is connected to the site only by the handwritten note on the top and, in any event, the delivery occurred in early July 2011 (ECF No. 25-3), consistent with the timing of the one pass acknowledged in the affidavit (ECF No. 20-7, ¶ 12. a.). More importantly, the report upon which Lewke relies is dated November 24, 2012 (ECF No. 20-6), more than six months *after* the affidavit and search warrant. Obviously, an affiant cannot be faulted for not including in an affidavit information he did not have at the time he prepared his affidavit.

15

Lewke's argument with respect to the discrepancies between the adjustor's audit and Lewke's reported harvest does not appear based upon an alleged false or misleading statement or omission. As such, it is not within the ambit of a *Franks* motion. Rather, the argument is simply a general argument as to the sufficiency of the warrant.

Based upon Bucci's affidavit, a harvest that is a bit more than 20 bushels per acre off from what was expected based upon a pre-harvest audit, standing alone, is unlikely to be probative of fraud. But that is not what Bucci's affidavit alleged. It alleged significant and widespread discrepancies covering six Wisconsin counties and nearly 1,100 acres. (ECF No. 20-7, ¶ 12.) The appraisals estimated production of roughly 105,800 bushels, yet Lewke reported production of only 71,921 bushels. Even accounting for a 20 bushel per acre discrepancy as a result of loss during harvest, there remains an apparently unaccounted for absence of nearly 13,000 bushels. However, this total takes into account the Taylor County parcel where Lewke reported production far above (roughly 27% above) what the appraisal estimated. (ECF No. 20-7, ¶ 12. d.) Such overproduction, according to Bucci, is inexplicable given that some production is lost during the harvest process, and suggests that Lewke was falsely reporting that corn produced in other counties was produced in Taylor County.

The likelihood that these discrepancies were the result of intentional fraud is corroborated by the discrepancies between what Lewke reported and the logs of the drivers working with the cooperating farmer. (ECF No. 20-7, ¶ 14. c.) The driver's log

16

repeatedly notes instances of corn being delivered to a grain elevator that was never reported on the settlement sheets that Lewke reported to the insurance company.

Additional facts provide further corroboration. Lewke's reported production on an irrigated field was substantially below that realized on similar fields. Additionally, although Lewke reported irrigating the field three times during the season, his neighbor observed the field being irrigated only once, an observation supported by electrical records. (ECF No. 20-7, ¶ 12. a.)

Certainly there could be innocent explanations for all of these discrepancies. But probable cause does not depend upon an absence of innocent explanations. In fact, probable cause need not even be more likely true than not. *United States v. Bullock*, 632 F.3d 1004, 1022 (7th Cir. 2011). "Probable cause is a 'commonsense, nontechnical conception that deal[s] with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Id.* (quoting *Ornelas v. United States*, 517 U.S. 690, 695 (1996)). It is a fluid concept determined by the "totality of the circumstances." *Gates*, 462 U.S. at 238.

Considering the entirety of the affidavit, the court finds that there is probable cause to believe that Lewke submitted fraudulent crop insurance claims. However, that is not the ultimate question. Rather, the court must assess whether there was probable cause to believe that evidence of the fraud was to be found in Lewke's home. Bucci's affidavit states: "The insurance adjuster believed J. Lewke kept his business records at

either his personal residence or at his office in Columbus, WI, as that is the only place where he had met with J. Lewke in the past. Accordingly, it is not believed records will be present in this location." (ECF No. 20-7, ¶ 15.)

Obviously, as written and read in isolation, this statement makes little sense. It does not accomplish what it attempted to do – state whether the records are likely to be at Lewke's office or home. Plainly, this lack of clarity is the product of an error in drafting the affidavit.

However, other portions of the affidavit set forth probable cause to believe that Lewke's house would contain the business records that were within the ambit of the search warrant. In paragraph 14(a), the cooperating farmer reported seeing the insurance agent in Lewke's house going over a large pile of scale tickets. This observation certainly tends to suggest that business records could be found in Lewke's home. Also probative is the fact that Lewke used his home for business purposes, such as meeting with his insurance agent, and as a location where his business associate, the cooperating farmer, could meet to pick up a check. Finally, Bucci's statement that persons such as Lewke will routinely keep the relevant records at their homes supports a probable cause finding that business records would be found in Lewke's home. (ECF No. 20-7, ¶ 20.)

Read as a whole and in consideration of the totality of the circumstances, the court finds that the affidavit sets forth probable cause to believe that evidence of a crime

would be found at Lewke's residence. Therefore, the court will deny Lewke's request for a *Franks* hearing and recommend that Lewke's motion to suppress be denied.

**IT IS THEREFORE ORDERED** that Lewke's motion for a bill of particulars (ECF No. 17) is **denied**.

**IT IS THEREFORE ORDERED** that Lewke's request for a *Franks* hearing is **denied**.

**IT IS FURTHER RECOMMENDED** that Lewke's motion to suppress (ECF No. 19) be **denied**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(A), (B) and (C) and Fed. R. Crim. P. 59(a) and (b)(2) whereby written objections to any order or recommendation herein or part thereof may be filed within fourteen days of the date of service of this recommendation and order or prior to the Final Pretrial Conference, whichever is earlier. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Failure to file a timely objection with the district court shall result in a waiver of a party's right to appeal.

Dated at Milwaukee, Wisconsin this 24th day of November, 2015.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge